Filed 2/13/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JEREMY LUKE HENDRIX,<br><br>　　　　Defendant and Appellant. | C082568<br><br>(Super. Ct. No. 15M15521) |

　　　　APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

　　　　Jeremy Luke Hendrix, in pro.per., for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Michael P. Farrell, Assistant Attorneys General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Jeremy Luke Hendrix entered a plea of no contest to driving with a blood-alcohol content (BAC) of 0.08 or higher, admitted an allegation his BAC was 0.15 or higher, and was placed on informal probation.  Prior to entering this plea, defendant moved to dismiss the case pursuant to Penal Code[1] section 654 and *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*), arguing his payment of a fine associated with a traffic citation issued during the traffic stop that resulted in his arrest for driving under the influence (DUI) barred subsequent prosecution for the DUI offense.  The trial court denied the *Kellett* motion.  We granted defendant's petition for transfer to this court from the superior court's appellate division in order to review this decision.  We now affirm the judgment (order of informal probation).

BACKGROUND

The facts are taken from the police report.  During the early morning hours of November 14, 2015, an Elk Grove police officer witnessed a silver Audi making a right turn through a red light without first making a complete stop.  Defendant was the driver. When the officer pulled defendant over and informed him of the reason for the stop, defendant admitted running the red light, said he was "just in a hurry to get home," and volunteered: "I haven't been drinking.  Officer[,] you know I'm not drunk."  Defendant had been drinking, as evidenced by the strong odor of alcohol the officer detected on his breath, slurred speech, and bloodshot eyes.  Defendant also failed several field sobriety tests, one administered by the officer who pulled him over, and others administered by a second officer who arrived at the scene to assist in the investigation.  When a breath sample was requested for a preliminary alcohol screening test, defendant initially refused and then agreed to provide a sample, but did not provide enough of a sample to generate a

---

[1]      Undesignated statutory references are to the Penal Code.

reading. He then refused to provide another sample. Defendant was cited for failure to stop at the red light, signed the citation, and was provided with a copy. He was also arrested for driving under the influence (DUI) and taken to the Sacramento Main Jail, where he provided a blood sample for BAC testing.

In December 2015, defendant was charged with DUI and driving with a BAC of 0.08 or higher. It was also alleged defendant's BAC was 0.15 or higher.

In January 2016, defendant paid the fine associated with the red light infraction which amounted to a no contest plea and conviction of that offense, as defendant was informed on the back of the citation he received.[2]

In February 2016, defendant filed a motion to dismiss the DUI case pursuant to section 654 and *Kellett,* arguing his conviction of the red light infraction barred subsequent prosecution for the DUI case. As we explain more fully in the discussion portion of the opinion, *Kellett* holds: "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in

---

[2] In response to an assertion raised by the Attorney General in the respondent's brief, i.e., defendant did not produce evidence establishing he was convicted of the red light infraction, defendant requests that we take judicial notice of this conviction. We need not do so, however, because the payment of the fine amounts to the conviction and evidence of such payment is already in the record. Defendant also asks that we take judicial notice of the language written on the back of the citation, informing him that such payment amounts to conviction. We grant this request. The fact such language appears on the back of traffic citations is "not reasonably subject to dispute and . . . capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) Nor does the Attorney General dispute this notice appeared on the back of defendant's citation.

3

either acquittal or conviction and sentence." (*Kellett*, *supra*, 63 Cal.2d at p. 827.) The trial court denied defendant's *Kellett* motion. Defendant's subsequent petition for writ of prohibition, filed with the superior court's appellate division, was also denied, as was his petition for certification of the case for transfer to this court. Thereafter, in July 2016, defendant entered a plea of no contest to driving with a BAC of 0.08 or higher and admitted his BAC was 0.15 or higher. The trial court placed defendant on informal probation. The following month, we granted defendant's petition for transfer of the case to this court in order to determine whether or not section 654, as interpreted by our Supreme Court in *Kellett* and *In re Dennis B.* (1976) 18 Cal.3d 687 (*Dennis B.*), required dismissal of the DUI case under these circumstances.

## DISCUSSION

Defendant contends his conviction in the DUI case must be reversed because the statutory bar against multiple prosecutions required dismissal of the case. We are not persuaded.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

While this provision addresses both multiple punishment and multiple prosecution, these "separate concerns have different purposes and different rules of prohibition." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his [or her] criminal liability." (*Neal v. State of California* (1960) 55

4

Cal.2d 11, 20, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 344.) At the same time, "[t]he rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (*Neal* at p. 21.)

In *Kellett*, *supra*, 63 Cal.2d 822, our Supreme Court held that section 654 prohibits multiple prosecution when the People either know or reasonably should know that "the same act or course of conduct play[ed] a significant part" in both offenses. (*Id.* at p. 827.) There, the defendant was arrested while standing on the sidewalk with a gun in his hand. (*Id.* at p. 824.) He was initially charged with exhibiting a firearm in a threatening manner, a misdemeanor. After a preliminary hearing, he was charged in a separate case with felony possession of a firearm by a felon. After pleading guilty to the misdemeanor charge, he unsuccessfully moved to dismiss the felony charge under section 654. (*Ibid.*) Our Supreme Court issued a writ of prohibition preventing the defendant's trial. (*Id.* at p. 829.) After explaining the "separate and distinct" purposes behind section 654's preclusion of multiple punishment and multiple prosecution, the court noted that section 954 "provides for the joinder in a single accusatory pleading of two or more offenses connected in their commission or having a common element of substantial importance in their commission." (*Id.* at p. 825.) The court then explained: "By a series of amendments to section 954 that have greatly expanded the scope of permissible joinder, the Legislature has demonstrated its purpose to require joinder of related offenses in a single prosecution. In addition to preventing harassment, joinder avoids needless repetition of evidence and saves the state and the defendant time and money." (*Id.* at p. 826, fn. omitted.)

5

Construing sections 654 and 954 in light of the "growing concern" that prosecution of "closely related individual offenses at separate trials may constitute an impermissible denial of that fundamental fairness required by the due process clause of the Fourteenth Amendment," the court stated: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for purposes of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. [¶] When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett*, *supra*, 63 Cal.2d at p. 827.) However, the court was also careful to emphasize: "Cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. In such situations the risk that there may be waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Accordingly, in such cases section 654 does not bar a subsequent felony prosecution except to the extent that such prosecution is barred by that section's preclusion of multiple punishment." (*Kellett*, *supra*, 63 Cal.2d at p. 828.)

In *Dennis B.*, *supra*, 18 Cal.3d 687, relied on by the trial court in denying defendant's *Kellett* motion in this case, our Supreme Court elaborated on the question

of whether or not a prosecutor reasonably should be aware of multiple offenses. There, a minor caused a fatal collision while making an unsafe lane change. After he was convicted of the traffic infraction, a petition was filed in the juvenile court alleging he was a person coming within the provisions of Welfare and Institutions Code section 602 because he committed the crime of vehicular manslaughter. The juvenile court sustained the petition. The minor appealed asserting the juvenile court proceedings were barred by section 654. (*Id*. at p. 690.) Our Supreme Court disagreed, explaining the prosecution was not actually aware, nor should it have been aware, of more than one offense. With respect to actual knowledge, the court explained: "The reference in *Kellett* to situations in which 'the prosecution is . . . aware of more than one offense' applies, however, only to intentional harassment, i.e., to cases in which *a particular prosecutor* has timely knowledge of two offenses but allows the multiple prosecution to proceed." (*Id*. at p. 693, italics added.) Because "the district attorney's office played a limited role in the prosecution of routine traffic offenses," there was no evidence any particular prosecutor "actually knew of both offenses in time to prevent a multiplicity of proceedings." (*Ibid*.)

Turning to the question of "whether the prosecution should have known of the two offenses," the court considered three factors. First, "the disparity in gravity between the two charged offenses" weighed against concluding the prosecution should have known about the traffic infraction because the "potential harassment and expense faced by a defendant so charged is minimal" compared to the situation in which "both offenses are serious crimes." (*Dennis B.*, *supra*, 18 Cal.3d at p. 694.) Second, the state has a "substantial interest in maintaining the summary nature of minor motor vehicle violation proceedings" that "would be impaired by requiring the prosecution to ascertain for each infraction the possibility of further criminal proceedings." (*Id*. at p. 695.) Finally, the

7

state also has "an undeniable . . . interest in prosecuting serious misdemeanors and felonies." (*Id*. at p. 696.) The court concluded: "On balance, we believe the minimal potential for harassment and waste caused by defendant's multiple prosecution in the case at bar is outweighed by the state's interests in preserving the summary nature of traffic proceedings and insuring that a defendant charged with a felony or serious misdemeanor does not evade appropriate disposition. [Citation.] Accordingly, juvenile proceedings arising from the unsafe lane change are not barred by defendant's traffic conviction." (*Ibid*.)

Thus, there are two related but distinct questions: (1) whether "the same act or course of conduct play[ed] a significant part" in both offenses (*Kellett*, *supra*, 63 Cal.2d at p. 827); and (2) "whether on the record herein the prosecution was or should have been 'aware of more than one offense.' " (*Dennis B.*, *supra*, 18 Cal.3d at pp. 692-693.)

In answering the first of these questions, we find *People v. Hurtado* (1977) 67 Cal.App.3d 633 (*Hurtado*) to be instructive. There, the defendant was pulled over for driving erratically and at an excessive speed and ultimately arrested for DUI. While he was being handcuffed, the defendant attempted to hide a cigarette package, which was seized and found to contain balloons filled with heroin. He was charged with three narcotics offenses in one case and with DUI in a separate case. After pleading guilty to the DUI charge, he moved to dismiss the narcotics case pursuant to section 654 which was denied. (*Id*. at pp. 635-636.) The Court of Appeal affirmed. In determining whether the same act or course of conduct played a significant part in both the DUI and the narcotics charges, the court applied an "evidentiary test" it previously established in *People v. Flint* (1975) 51 Cal.App.3d 333, 336, explaining that "if the evidence needed to prove one offense necessarily supplies proof of the other . . . the two offenses must be prosecuted together, in the interests of preventing needless harassment and

8

waste of public funds." (*Hurtado*, *supra*, 67 Cal.App.3d at p. 636, fn. 1.) The court reasoned: "[T]he evidentiary pictures which had to be painted to prove the [DUI] and narcotics offenses were sufficiently distinct so as to permit separate prosecutions . . . . Proof of the [DUI] charge was supplied primarily by the observations of the highway patrol officers made after defendant was stopped and given certain sobriety tests. Proof of the heroin charges hinged upon the discovery of the cigarette package filled with heroin, which occurred after the arrest for [DUI] had been made. Evidence in the two cases, was for the most part mutually exclusive, the only common ground being the fact that defendant was in the moving automobile in possession of the heroin at the same time that he was under the influence of alcohol. Such a trivial overlap of the evidence, however, under *Kellett* and *Flint* does not mandate the joinder of these cases." (*Id.* at pp. 636-637.)

Here, as in *Hurtado, supra*, 67 Cal.App.3d 633 the evidence required to prove the red light infraction was sufficiently distinct from that required to prove the charges in the DUI case so as to permit separate prosecutions. Although the red light infraction and the DUI offenses were recorded in the same police report, all that is needed to prove the red light infraction is proof defendant rolled through that light. The fact defendant was intoxicated when he did so is not relevant to his liability for this infraction of the Vehicle Code. Conversely, the evidence needed to prove the DUI offenses was supplied by the observations the officers made after defendant was stopped, his failure to successfully perform various field sobriety tests, and his subsequent BAC testing. This evidence depended in no way on the circumstances that led to defendant being pulled over. The offenses are thus factually distinct.

While it is true that had defendant chosen to contest the red light infraction, both he and the officer who pulled him over would have been required to participate in two

9

proceedings, defendant "created his own problems of harassment" by failing to "have consolidated the actions at some time prior to his appearance in response to the [red light infraction] citation." (*Stackhouse v. Municipal Court* (1976) 63 Cal.App.3d 243, 247; see also *People v. Hartfield* (1970) 11 Cal.App.3d 1073, 1080 [the defendant "could at any time have avoided any harassment by moving for consolidation of the charges"].) "Moreover, *Kellett* states that the rule against multiple prosecutions is inapplicable where, as here, such prosecutions occur because of the lack of a common prosecutor and the risk of waste and harassment of multiple prosecutions is outweighed by the risk that a defendant guilty of a [greater offense] will escape proper punishment." (*Stackhouse v. Municipal Court*, *supra*, 63 Cal.App.3d at p. 247.) Here, there is no assertion the district attorney's office handled the prosecution of the red light infraction. Indeed, district attorney's offices typically play a limited role in the prosecution of routine traffic offenses. (See, e.g., *Dennis B.*, *supra*, 18 Cal.3d at p. 693.) And given the summary nature of minor traffic violation proceedings, the risk of waste and harassment inherent in allowing the subsequent DUI prosecution in this case is substantially outweighed by the prospect defendant would otherwise escape proper punishment for a very serious misdemeanor simply because he paid a traffic ticket related to factually distinct conduct that led to his being pulled over and thereafter arrested for DUI.

Nevertheless, defendant contends there is "no dispute that the failure to stop offense and the [DUI] offense arise from the same course of conduct" because "the failure to stop offense [led] to the [DUI] offense." He then argues the second step of the analysis, i.e., the prosecutor either knew or reasonably should have known about both offenses because both were recounted in the police report. However, as we have explained, the test for resolving the first step of the analysis is not whether one offense led to the second offense. If that were the test, *Hurtado, supra,* 67 Cal.App.3d 633

10

would have been decided quite differently. There, it will be recalled, it was the defendant's DUI arrest that caused him to attempt to hide the cigarette packet containing heroin, thereby leading to the narcotics charges. However, because the offenses were factually distinct, separate prosecutions were permissible under *Kellett, supra,* 63 Cal.2d 822. So too here.

*People v. Bas* (1987) 194 Cal.App.3d 878 does not undermine this conclusion. There, based on the same auto collision, the defendant was charged in one case with two misdemeanors and two infractions, including failure to yield the right of way, and in another case with two counts of felony DUI causing injury. The felony complaint specifically alleged the failure to yield as an element of the DUI charges, i.e., the defendant "did 'an act forbidden by law in violation of Vehicle Code Section 21801(a) [failure to yield the right of way] . . . which act . . . proximately caused . . . bodily injury to [the victims].' " (*Id.* at p. 880.) The Court of Appeal held the defendant's guilty plea to the infraction barred the subsequent prosecution for the felony DUI offenses where the same prosecutor handled both cases, the defendant informed the prosecutor he wished to plead to the traffic offenses so that the felony charges would be barred, and the prosecutor nevertheless failed to have the cases consolidated. (*Id.* at pp. 880-881.) Here, unlike *Bas*, the red light infraction was not alleged as an element of the DUI offenses. Instead, the complaint simply alleged defendant willfully and unlawfully drove a vehicle while under the influence of alcohol (Count One) and while having a BAC of 0.08 or more (Count Two). Thus, while the failure to yield "play[ed] a significant part" (*Kellett, supra*, 63 Cal.2d at p. 827.) in the DUI offenses in *Bas*, the same cannot be said of the red light infraction in this case.

Because the same act or course of conduct did not play a significant part in both the red light infraction and the DUI offenses, we conclude section 654 does not bar prosecution of the latter offenses.[3]

DISPOSITION

The judgment (order of informal probation) is affirmed.

_____/s/_____
HOCH, J.

We concur:

_____/s/_____
ROBIE, Acting P. J.

_____/s/_____
MURRAY, J.

---

[3]     This conclusion makes it unnecessary to resolve the step-two question of "whether on the record herein the prosecution was or should have been 'aware of more than one offense.'" (*Dennis B.*, *supra*, 18 Cal.3d at pp. 692-693.)

12